# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Orlando Division

**GORDON FOOD SERVICE, INC.,**

     **Plaintiff,**

**v.**

**PRICE ARMSTRONG, LLC, OSCAR M. PRICE, IV, NICHOLAS W. ARMSTRONG, BROOKS, LEBOEUF, FOSTER, GWARTNEY, LEACE & HOBBS, P.A., RYAN B. HOBBS, DEAN R. LEBOEUF, RHONDA S. BENNETT, MATTHEW K. FOSTER, SCOTT E. GWARTNEY, JOHN M. LEACE, SNELLGROVES RESTAURANT, INC., TAMMY DEVANE, CURTIS DEVANE, AND K & T OF PANAMA CITY, LLC,**

     **Defendants.**

_____/

## <u>COMPLAINT</u>

*Gordon Food Service, Inc.*, sues *Price Armstrong, LLC, Oscar M. Price, IV, Nicholas W. Armstrong, Brooks, LeBoeuf, Foster, Gwartney, Leace & Hobbs, P.A., Ryan B. Hobbs, Dean R. LeBoeuf, Rhonda S. Bennett, Matthew K. Foster, Scott E. Gwartney, John M. Leace, Snellgroves Restaurant, Inc., Tammy Devane, Curtis Devane, and K&T of Panama City, LLC*, and states:

## I.    THE PARTIES.

1.    Gordon Food Service, Inc. ("<u>GFS</u>") is a Michigan corporation that (a) maintains its principal place of business at 1300 Gezon Parkway SW, in Wyoming, Michigan; (b) and transacts business within the State of Florida; and (c) has at all times material hereto complied with the State of Florida's requirements for transacting business within the State.

2.      Price Armstrong, LLC ("Price Armstrong") is an Alabama limited liability law firm that maintains its principal place of business at 2421 2nd Avenue North, Unit 1, in Birmingham, Alabama.

3.      Oscar M. Price, IV, is an Alabama licensed attorney, who is not licensed in the States of Florida or Georgia but practices law in Florida and Georgia as well as in the State of Alabama.  Mr. Price is an equity member in the law firm Price Armstrong, LLC.

4.      Nicholas W. Armstrong is an Alabama licensed attorney, who is not licensed in the States of Florida or Georgia but practices law in the States of Florida and Georgia as well as in the State of Alabama.  Mr. Armstrong is an equity member in the law firm Price Armstrong, LLC.

5.      Brooks, LeBoeuf, Foster, Gwartney, Leace & Hobbs, P.A. ("Brooks LeBoeuf") is a Florida professional association (law firm) that maintains its principal place of business at 909 East Park Avenue, in Tallahassee, Florida.

6.      Ryan B. Hobbs is a Florida licensed attorney and a named shareholder, principal and practicing attorney at Brooks LeBoeuf, and is based at the firm's sole office located at 909 East Park Avenue, in Tallahassee, Florida.

7.      Dean R. LeBoeuf is a Florida licensed attorney and a named shareholder and practicing attorney at Brooks LeBoeuf, the law firm's President and CEO, and is based at the firm's sole office located at 909 East Park Avenue, in Tallahassee, Florida.

8.      Rhonda S. Bennett is a Florida licensed attorney and a shareholder and practicing attorney at Brooks LeBoeuf, and is based at the firm's sole office located at 909 East Park Avenue, in Tallahassee, Florida.

9. Matthew K. Foster is a Florida licensed attorney and a named shareholder and practicing attorney at Brooks LeBoeuf, and is based at the firm's sole office located at 909 East Park Avenue, in Tallahassee, Florida.

10. Scott E. Gwartney is a Florida licensed attorney and a named shareholder and practicing attorney at Brooks LeBoeuf, and is based at the firm's sole office located at 909 East Park Avenue, in Tallahassee, Florida.

11. John M. Leace is a Florida licensed attorney and a named shareholder and practicing attorney at Brooks LeBoeuf, and is based at the firm's sole office located at 909 East Park Avenue, in Tallahassee, Florida.

12. Snellgrove's Restaurant, Inc. ("Snellgrove's") is a defunct Florida corporation that the Florida Department of State dissolved on September 28, 2018 and is therefore no longer authorized to conduct business in the State of Florida.

13. Tammy Devane is an individual who resides in Hillsborough County, Florida and has been an officer, director and shareholder of Snellgrove's.

14. Curtis Devane is an individual who resides Hillsborough County, Florida and has been an officer, director and shareholder of Snellgrove's.

15. K&T of Panama City, LLC ("K&T") is a Florida limited liability company that maintains is principal place of business at 1114 Thomas Drive, Panama City, Florida

## II.     JURISDICTION AND VENUE.

16. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over a number of federal claims asserted in this Complaint as they seek relief under the laws of the United States. Jurisdiction is also conferred pursuant to 18 U.S.C. §1836 because certain claims brought by the

Plaintiff arise under the federal Defend Trade Secrets Act and are based on trade secrets related to services in interstate commerce.

17.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, as the state law claims share all common operative facts with the federal law claims, and the parties are identical.  Resolving all state and federal claims in a single action serves the interests of judicial economy and fairness.

18.     This Court has personal jurisdiction over the Defendants because (a) all but three of the Defendants are domiciled in the State of Florida; (b) all, including Price Armstrong, Oscar Price and Nicholas Armstrong, transact business in the State of Florida; and (c) the acts and omissions of each Defendant giving rise to the claims asserted herein occurred in the State of Florida.

19.     Venue is proper in this District under the provisions of 28 U.S.C. § 1391 because: (a) the acts and omissions giving rise to this lawsuit occurred within the Middle District of Florida; and/or (b) several of the Defendants reside within the Middle District of Florida; and/or (c) all parties to this lawsuit conduct business within the Middle District of Florida.

## III.    BACKGROUND FACTS.

20.     This lawsuit is the result of several acts of malfeasance by Oscar Price, Nicholas Armstrong, and the Price Armstrong law firm, acting in concert as an illicit enterprise with the other named Defendants to (among other things): (a) misappropriate proprietary and trade secret information from GFS and use the information for their own benefit and to the detriment of GFS; (b) abuse the Florida court system to extort money from GFS (and other business entities that legally conduct business in Florida); and (c) engage in the illegal practice of law in furtherance of

their efforts to extort money from GFS (and other business entities that legally conduct business in Florida).

21.     The Price Armstrong law firm created an illegal enterprise by which Price Armstrong wrongfully uses the Brooks LeBoeuf law firm and Mr. Hobbs as an artificial (improper) "Florida Office" to fish for potential clients in Florida to exploit businesses in our state. Price Armstrong partakes in false advertising and other inappropriate schemes (as will be described in the forthcoming allegations) to obtain clients in Florida, like the Devanes—who will receive a kick back for partaking in the enterprise profits and scheme—and file class action lawsuits. As of late, a main source of exploitative suits revolves around allegedly wrongful fuel surcharges.

22.     Oscar Price and Nicholas Armstrong created the Price Armstrong law firm in 2015 purportedly to represent individuals and small businesses in consumer lawsuits against corporations.



Price Armstrong is a focused, specialized law firm with a history of excellence in complex litigation. Our attorneys have represented individuals and small businesses in class actions, investor fraud lawsuits, and drug and medical device lawsuits in more than 50 venues across the U.S. We've also represented whistleblowers in variety of qui tam litigation, advocating for individuals willing to expose fraud perpetrated against the federal government in the Medicare, shipping, and environmental sectors.

23.     On its face, the Price Armstrong law firm appears to be a plaintiff law firm advocating for justice for its clients, when in fact, this mantra is a subterfuge to advance its real business model of using clients to pursue baseless claims against corporations for its own personal gain.  In other words, the firm induces clients into retaining it under the guise of representing the clients' interests when in fact the clients are nothing more than a tool for the law firm to extort money from the companies it has targeted.

24.     Oscar Price and Nicholas Armstrong are attorneys licensed to practice law ***only*** in Alabama, but they represent to the general public (including consumers and potential clients) that they and their law firm provide legal services to Florida based clients vis-à-vis their office in Tallahassee, Florida using the byline "THREE LOCATIONS, NATIONWIDE REPRESENTATION" on their webpage.  Price Armstrong is an Alabama limited liability law firm company that is only authorized to conduct business in the State of Alabama, contrary to the law firm's website.

25.     Below are screenshots of Price Armstrong's website identifying its three office locations:

# *THREE LOCATIONS, NATIONWIDE REPRESENTATION*

Price Armstrong represents clients across the nation. If you have been harmed by a defective product, a financial institution or other business, **contact the attorneys at Price Armstrong** for a confidential, free consultation and review of your case.

### BIRMINGHAM, ALABAMA

2226 First Avenue South
Birmingham, AL 35233

**LEARN MORE>**

### TALLAHASSEE, FLORIDA

909 East Park Ave
Tallahassee, FL 32301

**LEARN MORE>**

### ALBANY, GEORGIA

517 W Broad Ave
Albany, GA 31701

**LEARN MORE>**





# *A HIGHER CALIBER FIRM*

Price Armstrong is a complex litigation firm that represents plaintiffs across the United States. Since its founding, Price Armstrong has been dedicated to the prosecution of complex, high-value litigation on behalf of individuals and businesses. With offices in **Alabama**, **Georgia**, and **Florida**, we are known for class litigation, whistleblower actions, and high-stakes individual claims in both state and federal courts.

Our model is unique. Each of our attorneys has a background working for some of the largest defense firms in the Southeast and the credentials to match. But our structure ensures that we can bring to bear an agility of thought and action, and a level of focus and dedication, to the prosecution of plaintiff's claims that no defense firm can replicate. We are client-focused and work solely on a contingency fee basis. Our select team carefully chooses the cases we take on to ensure that each receives the level of attention it deserves so that we can maximize our ability to win on our clients' terms. Price Armstrong has the experience and resources to out-litigate and out-result the most well-funded corporations in the US. We have developed a reputation for relentless, aggressive litigation and our proven track record of superior results is testimony to our method.

26.     Price Armstrong falsely represents to the general public (e.g., consumers and potential clients) that it maintains a physical office at 909 East Park Avenue, in Tallahassee, Florida. However, the actual law firm located at this business address is one of its cohorts, the Brooks LeBoeuf law firm. Price Armstrong maintains this facade as a predatory marketing tactic to compete for and pursue legal work in the State of Florida from Florida based consumers without the consequences or responsibilities of proper Florida attorneys.

27.     Since Price Armstrong represents to the public that it maintains a physical office in Tallahassee, and conducts business in Florida, it must comply with Section 608.501, Florida Statutes, which provides that a ***"foreign limited liability company may not transact business in this state until it obtains a certificate of authority from the Department of State,"*** (***emphasis supplied***). This process also includes identifying a person or entity to serve as its registered agent to accept service of process.

28.     Price Armstrong has failed to comply with the requirements of Chapter 608, Florida Statutes, and is thus transacting business in Florida without authority to do so.

29.     Specifically, the Florida Department of State has no evidence of

a. Price Armstrong filing the requisite documents to obtain a certificate of authority to transact business in the State of Florida;

b. The State issuing Price Armstrong a Certificate of Authority to transact business in the State of Florida; or

c. Price Armstrong designating a registered agent domiciled in the State of Florida to accept service of process on its behalf.

30.     Further, upon information and belief, the Florida Department of Revenue has no evidence that Price Armstrong has registered itself as an entity with employees in Florida, paying the requisite employment insurance and other payroll or employer related taxes, fees, and so forth

that all employers doing business in Florida, and maintaining a place of business in Florida, are required to pay.

31.     In addition to failing to comply with Chapter 608, Florida Statues, and failing to satisfy its obligations with the Florida Department of Revenue, Price Armstrong (including its equity partners) is violating Rules 4-7.12, 4-7.13, and 4-7.14 of the Rules Regulating the Florida Bar, with regards to representation of maintaining an office in Florida (Tallahassee, Florida).

32.     Rule 4-7.12(a)(2), Required Content (Location of Practice), provides

> … All advertisements for legal employment must include…the city,
> town, or county of 1 or more bona fide office locations of the lawyer
> who will perform the services advertised…

33.     The comment to Rule 4-7.12 defines 'bona fide office' as 'a physical location maintained by the lawyer or law firm where the lawyer or law firm reasonably expects to furnish legal services in a substantial way on a regular and continuing basis.'

34.     The commentary also states that "An office in which there is little or no full-time staff, the lawyer is not present on a regular and continuing basis, and where a substantial portion of the necessary legal services will not be provided, is not a bona fide office for purposes of this rule."

35.     Other commentary from the Florida Bar's Standing Committee on Advertising ("SCA") provides guidance that "All forms of lawyer advertising must disclose the city, town or county of 1 or more bona fide office locations of the lawyer or lawyers who will perform the services advertised. The SCA has found that an advertisement is misleading if it lists law firm offices in several cities when, in fact, there are no bona fide firm offices in those cities."[1]

---

[1] https://www-media.floridabar.org/uploads/2019/12/Handbook-2018-12-13-19-ADA-Compliant.pdf

36.     The SCA has developed the following criteria for determining whether an advertised location is a bona fide office:

- Does the office have the firm's name on an outside office sign or on the building's directory?

- Is the advertised location staffed by law firm employees who answer phone calls at that location from prospective clients?

- Is the advertised location staffed by receptionists, secretaries, clerks, or paralegals employed by the firm on a full-time basis?

- Other than client interviews and conferences, do firm attorneys furnish legal services from the advertised location?

- Is the advertised location staffed by at least one firm lawyer on a regular and continuing basis?

37.     The following are other relevant additional Florida Bar Rules, to which Price Armstrong and its attorney-cohorts are in violation of:

a.  **Rule 4-7.14(a) Potentially Misleading Advertisements**.  Potentially misleading advertisements include, but are not limited to:  (1)  advertisements that are subject to varying reasonable interpretations, 1 or more of which would be materially misleading when considered in the relevant context; (2)  advertisements that are literally accurate, but could reasonably mislead a prospective client regarding a material fact; (3)  references to a lawyer's membership in, or recognition by, an entity that purports to base the membership or recognition on a lawyer's ability or skill, unless the entity conferring the membership or recognition is generally recognized within the legal profession as being a bona fide organization that makes its selections based on objective and uniformly applied criteria, and that includes among its members or those recognized a reasonable cross-section of the legal community the entity purports to cover;

b.  **Rule 4-7.13 Deceptive and Inherently Misleading Advertisements**. A lawyer may not engage in deceptive or inherently misleading advertising. (a)  Deceptive and Inherently Misleading Advertisements.  An advertisement is deceptive or inherently misleading if it: (1) contains a material statement that is factually or legally inaccurate; (2) omits information that is necessary to prevent the information supplied from being misleading; or (3)  implies the existence of a material nonexistent fact.

c.  **Comments to Rule 4-7.13**.  "Implied Existence of Nonexistent Fact: An example of the implied existence of a nonexistent fact is an **advertisement stating that a lawyer has offices in multiple states if the lawyer is not licensed in those states or is not authorized to practice law.**  Such a statement implies the nonexistent

fact that a lawyer is licensed or is authorized to practice law in the states where offices are located."

38.   Provided below are screenshots of the sign in front of the business office located at

909 East Park Avenue, Tallahassee, Florida:





39.     As evidenced by these screenshots, the law firm located at this address is Brooks LeBeouf, not Price Armstrong.

40.     In addition to its name not being included in the sign outside of its advertised "Florida Office,":

    a.  Price Armstrong does not maintain any staff at the advertised Florida office to answer telephone calls from current or prospective clients.  In fact, Price Armstrong does not have a Florida telephone number, only an Alabama telephone number.

    b.  Price Armstrong's so called "Florida Office" is not staffed by receptionists, secretaries, clerks, or paralegals employed by the law firm.

    c.  The Price Armstrong law firm does not employ an attorney at its so called "Florida Office" who sees firm clients at that location, and who conducts other firm business at that physical location on a regular and continuing basis.

41.     Price Armstrong's website identifies only two non-attorney employees of the law firm, both of whom work from its sole office, which is in Birmingham, Alabama, to wit:



**AMY RIXEY**
**Director of Client Relations**

READ MORE



**ASHLEY MONK**
**Client Relations Manager**

READ MORE

42.     To make matters worse, Price Armstrong wrongfully represents/advertises to the public that it employs an attorney who works for the Price Armstrong law firm and provides legal services to the firm's Florida based clients – Ryan B. Hobbs.

43.     Below is a screenshot of this representation/advertisement on Price Armstrong's website (https://www.pricearmstrong.com/our-firm/our-attorneys/ryan-hobbs/) -





**TALLAHASSEE ATTORNEY OF COUNSEL**

Ryan represents individuals and businesses in a variety of complex commercial and employment matters, focusing his practice in the State of Florida. He graduated from Florida State University Summa Cum Laude and earned his law degree from North Carolina School of law, where he was a Dean's Fellow, and clerked at the North Carolina Court of Appeals for Judge James A. Wynn. He is licensed only in Florida. Ryan has been named in the top 40 under 40 by the National Advocates.

44.     A person who reads this representation/advertisement on the Price Armstrong website would reasonably conclude that Mr. Hobbs is an attorney with Price Armstrong who handles the Price Armstrong firm's legal matters in Florida and works from the Price Armstrong firm's office in Tallahassee.

45.     The Price Armstrong advertisement makes no mention of the fact that Mr. Hobbs is a named shareholder in his own Florida based law firm, or that his attorney work at Price Armstrong is merely to act as local counsel or co-counsel for the Price Armstrong firm; in other words, Price Armstrong neglects to state that Mr. Hobbs is not actually with its law firm but, in fact, he is with a different law firm, which is separate and distinct from the Price Armstrong law firm.

46.     Price Armstrong falsely advertises Mr. Hobbs' status with its firm to mislead the general public so that a person considering doing business with that firm would believe that it has legal capabilities in Florida through its Florida attorney Ryan B. Hobbs.

47.     In fact, Mr. Hobbs is not an attorney with Price Armstrong but, rather, he is a named shareholder in the Defendant law firm Brooks LeBeouf.

48.     The   Brooks   LeBeouf   website   identifies   Mr.   Hobbs   as   follows (https://www.toomuchatstake.com/our-attorneys/ryan-b-hobbs/):


[INTENTIONALLY LEFT BLANK]



49. The "professional associations" portion of Mr. Hobbs' bio on the Brooks LeBeouf website makes no mention of any affiliation of Mr. Hobbs with Price Armstrong.



50.    The Florida Bar requires all lawyers to register their current contact and employment information with the Bar so that consumers can easily locate the lawyer, among other reasons, and each lawyer is obligated to maintain her or his contact information on file with The Florida Bar as accurate and up to date.

51.    Mr. Hobbs' information recorded on the Florida Bar website is as follows:



52.    Attached and marked as **Exhibit 1** is a copy of Brooks LeBoeuf's Answers to interrogatories served in one of the cases it filed against GFS on behalf of its client Snellgrove's. The Answers are signed, under oath, by Dean LeBoeuf, the President and CEO of the law firm.

53.    When asked about the affiliation between Price Armstrong, Ryan Hobbs and Brooks LeBoeuf, and in particular about Price Armstrong maintaining an office in Florida at the same address as Brooks LeBoeuf, Mr. LeBoeuf answered as follows:

**INTERROGATORY NO. 1:**          Please explain the nature of Ryan Hobbs' employment or affiliation with *Brooks LeBoeuf* as detailed on the law firm's website.

    **Answer:**          **Mr. Hobbs is a partner of the Brooks LeBoeuf Law Firm.**

**INTERROGATORY NO. 2:**          Please explain the nature of *Brooks LeBoeuf's* affiliation with Price Armstrong, LLC and *Brooks LeBoeuf's* employment of any of the lawyers or staff of Price Armstrong, LLC, and Price Armstrong, LLC's representation that it maintains a Florida office at the very same office as *Brooks LeBoeuf.*

    **Answer:**          **Mr. Hobbs is of-counsel to Price Armstrong. The law firms of Price Armstrong and Brooks LeBoeuf have no "affiliation" other than the of-counsel relationship.**

~~INTERROGATORY NO. 3~~

54.    Further, when Mr. Hobbs initiated lawsuits against GFS (discussed below), he filed them as an attorney of Brooks LeBoeuf, using his Brook LeBeouf email address (rhobbs@tallahasseeattorneys.com, and using Brook LeBoeuf (and not Price Armstrong) to conduct his business.[2]

55.    If Mr. Hobbs were actually with Price Armstrong as the firm's "Tallahassee Attorney," Mr. Hobbs would have filed this lawsuit (and the prior class action cases that he filed against GFS) in the name of Price Armstrong, using his Price Armstrong email address and using Price Armstrong employees to support the case instead of using Brooks LeBoeuf resources and seeking to have Oscar Price and Nick Armstrong of Price Armstrong participate in the case as pro hac vice attorneys from another law firm, in another state.

56.    Thus, while Price, Armstrong and attorney Hobbs represent/advertise that Mr. Hobbs is an attorney with the Price Armstrong law firm, *in practice*, he does not participate in a

---

[2] Mr. Hobbs' assistant, Jeanetta Brown, has been the person who has filed documents on his behalf, contacted counsel to coordinate hearings, and to carry out other functions in support of Mr. Hobbs' participation in the lawsuits. Ms. Brown is an employee of Brook LeBeouf, and she uses a Brooks LeBoeuf email address (jeanetta@tallahaseeattorneys.com) to communicate with third parties (including the courts) on behalf of Mr. Hobbs' practice.

lawsuit as an attorney with the Price Armstrong law firm; Mr. Hobbs participates in a lawsuit as an attorney with  Brooks LeBeouf.

57.     However, Hobbs, Price, and Armstrong make representations to the general public (especially consumers) that they are all lawyers with the same law firm, when in fact this is not true.

58.     Further, upon information and belief, neither Price Armstrong nor Brooks LeBeouf have disclosed to their respective professional malpractice insurance carriers that (a) Mr. Hobbs is an attorney with both law firms; (b) that Price Armstrong maintains a physical office location at Brooks LeBeouf's office in Tallahassee, Florida, (c) that Mr. Hobbs is an attorney with another law firm; or (d) that both law firms are responsible for any acts or omissions by Mr. Hobbs.

59.     Mr. Hobbs' presence on the Price Armstrong website is an artifice contrived by Oscar Price and Nick Armstrong to allow them to improperly compete for and pursue legal work in the State of Florida from Florida based consumers, which means that they are unlawfully practicing law in the State of Florida without a license.

60.     Oscar Price and Nick Armstrong have improperly circumvented the law and requirements established by The Florida Bar to regulate and govern persons who can and are permitted to practice law in this State.

61.     Florida is not the only state in which the Price Armstrong law firm engaged in false advertising and misrepresentation to the general public.  The law firm has created the same artifice with respect to its practice of law the State of Georgia.

62.     The Price Armstrong law firm also identifies Patrick Flynn as its "Albany" Georgia Attorney, and represents to the public that the firm maintains a physical office at 517 W. Broad

Avenue,   Albany,   Georgia   31701   (https://www.pricearmstrong.com/our-firm/our-attorneys/patrick-flynn/).







63.    Like Ryan B. Hobbs, Mr. Flynn is not a partner, shareholder, or employee of Price Armstrong.  Rather, he is a named partner in his own law firm in Albany, Georgia where Price Armstrong represents that it maintains its Georgia office:





**Patrick S. Flynn**

**Location:** Albany, Georgia

**Phone:** 229-518-4050
800-646-8799

**Fax:** 229-446-4884

**Email:** Email Me

Patrick S. Flynn is a successful trial lawyer with expertise in lawsuits for wrongful death and personal injury. Since founding the firm, Patrick has recovered millions of dollars for clients through trials and settlements. Patrick routinely handles matters involving trucking, automobile collisions, premises liability, pharmaceutical errors, medical malpractice, and foodborne illnesses.

Patrick is an active member of the Georgia Trial Lawyers Association and is a Vice President for his District. Patrick was named a "Super Lawyer Rising Star" by AtlantaMagazine. Patrick is admitted to practice in Georgia and Alabama.

64.     There is no mention on the Flynn & Phillips website about any affiliation with Price Armstrong, and thus a consumer would reasonably conclude that Mr. Flynn is with his own law firm, and not with the Price Armstrong law firm.

65.     When a consumer calls Mr. Flynn's office to speak with him, they are told that he is the senior partner of Flynn & Phillips and there is no mention of his affiliation with Price Armstrong.

66.     The sign outside of the Flynn & Phillips office (517 West Broad Avenue in Georgia) does not identify Price Armstrong as having an office there.



67.     Price Armstrong does not maintain any employees, lawyers, or other evidence of its existence at its so-called Georgia office.

68.     Price Armstrong is not qualified to transact business in the State of Georgia, has not registered as an employer with the Georgia Department of Revenue, and the business does not pay taxes to the State of Georgia, which it would be required to do if it truly has an office in Georgia and its attorneys were practicing law in Georgia.

69.     Thus, it is reasonable that the public and a consumer seeking to retain a lawyer in Florida would be misled by Price Armstrong's practice capabilities as represented on its website.

70.     One would conclude that this law firm is an eight-lawyer law firm, with offices in three states, handling cases "nationwide" and in particular in Florida, Georgia, and Alabama, having achieved amazing results for the firm's clients.

71.     This depiction of the law firm is false.

72.     The Price Armstrong law firm has only six lawyers (assuming every Alabama "lawyer" identified on the website is in fact a lawyer and works at the law firm[3]), one office, and cannot take credit for the achievements of Messrs. Hobbs and Flynn since they actually are with other law firms that would be the recipients of any achievements by these two attorneys (i.e., any success each may have achieved would not have been as a Price Armstrong attorney, but as a member of his own law firm).

73.     Thus, Oscar Price, Nick Armstrong, Ryan Hobbs, Price Armstrong, Patrick Flynn, Brooks LeBeouf, and the various principals of Brooks LeBeouf are operating an illegal enterprise, misleading the general public and consumers who are seeking the assistance of qualified legal representation, and which engaged in unlawful activity that has damaged GFS.

## IV.     THE UNLAWFUL ENTERPRISE.

### A.     <u>The scheme to extort money from legitimate companies in Florida</u>.

74.     The enterprise operated by Oscar Price, Nick Armstrong, Ryan Hobbs, the Price Armstrong law firm, the Brooks LeBoeuf law firm, and the various principals of the latter (the "*Price Armstrong Enterprise*") has engaged in a pattern and practice of unlawfully soliciting and representing Florida clients in the restaurant industry, among others, in class actions against vendors alleging that these vendors charged the consumers an illegal fuel charge, when that is not the case.

75.     The business model of the Price Armstrong Enterprise has been to solicit restaurant owners and induce them into agreeing to serve as lead plaintiff in a class action lawsuit, with the

---

[3] For example, one of the Alabama lawyers identified on the Price Armstrong website is Emily Price, Oscar Price's spouse who, upon information and belief, does not actively engage in the practice of law on a full-time basis.

aim of abusing the litigation process to strong arm the target into an early settlement of the claim, in exchange for some renumeration to their client beyond the pittance of real damage available to the client.

76.    In other words, the Price Armstrong Enterprise induces the client into agreeing to be the class action representative in a lawsuit against its vendor by offering to pay its client inappropriate kickbacks.

77.    The Price Armstrong Enterprise capitalizes on the risks that class action litigation poses to its vendor target, not only in terms of the expense, but the fact that many of these vendor targets do business with the government.

78.    Such accusations against a business that does business with the government (local or federal) could have dire consequences to the entity, including criminal consequences should the government client elect to investigate allegations of fraudulent activity.

79.    The Price Armstrong Enterprise, in pursuing these claims against restaurant vendors, threatens to file additional lawsuits and take other action against the vendors to expose purported fraudulent activity should the vendors not settle, which is exactly what it did to GFS.

80.    The Price Armstrong Enterprise has used a basic form Complaint, in each instance, pursuing  a class action claim without first doing any prior due diligence, and hence without a good faith basis to sue GFS, to identify whether the fuel surcharge that the vendors collected was actually improper – as there is no statute, regulation, or other law establishing that a fuel surcharge is illegal. In fact, a fuel surcharge is a common practice in the transportation industry.

81.    A fuel surcharge is an extra fee that trucking companies (or third parties) charge to cover the fluctuating cost of fuel. It is calculated as a percentage of the base rate and is commonly usually added to a shipper's freight bill to cover the cost of operations. The fuel surcharge depends

on the average fuel price and can be different for each shipper or industry, depending on fuel cost to revenue ratio. It covers additional fuel costs and keeps carriers profitable, even when the cost of fuel rises.

82. Irrespective of the fact that a fuel surcharge is a common practice and that there are no laws prohibiting it, the Price Armstrong Enterprise has filed lawsuit after lawsuit against restaurant vendors, among others, claiming that the fuel surcharge collected against the Price Armstrong Enterprise's clients are illegal based on the Florida Unfair and Deceptive Trade Practices Act and the equitable theory of unjust enrichment.

83. The table below shows class action lawsuits recently filed by the Price Armstrong Enterprise in Florida:

| Case Number/Parties | Court | Date Filed | Status | Class Certification |
|---|---|---|---|---|
| Barnacle Bill's Oyster Bar and Seafood Restaurant, Inc. et al v. Sysco Corporation Case No. 4:17-cv-00130 | Northern District of Florida Tallahassee Division | 3/14/2017 | Closed Dismissal with Prejudice by Defendant | No |
| Snellgroves Restaurant, Inc. v. Performance Food Group, Inc. Case No. 18-CA-008326 | Thirteenth Judicial Circuit Hillsborough County, Florida | 8/24/2018 | Closed 60 Day Order of Dismissal | No |
| Hunters Run Apartments, LTD., et al v. WCA Waste Corporation, WCA of Florida, LLC, et al Case No.1:15-cv-151-MW-GRJ | Northern District of Florida Gainesville Division | 7/23/2015 | Closed Stipulation for Dismissal with Prejudice by Defendants | No |
| Brown Heating & Air Conditioning, LLC v. Sunbelt Rentals, Inc. Case No. 1:15-cv-20151-MGC | Southern District of Florida Miami Division | 1/15/2015 | Closed Plaintiff's Motion to Remand was Granted | No |
| Progressive Lighting &Energy Solutions, Inc.v. Sunbelt Rentals, Inc. Case No. 3:16-cv-01080 | Southern District of Florida Miami Division | 10/19/2016 | Closed Plaintiff's Motion to Transfer Venue to Northern District of | No |

| Case Number/Parties | Court | Date Filed | Status | Class Certification |
|---|---|---|---|---|
| | | | California was Granted | |
| **Townhouse Restaurant of Oviedo, Inc. V. NUCO2, LLC. Case No. 2:19-cv-14085** | Southern District of Florida Fort Pierce Division | 3/6/2019 | Open | TBD |
| **R&B Contracting Company, Inc v. Argos Ready Mix, LLC. Case No. 2015-CA-1703** | Northern District of Florida Pensacola | 11/25/2015 | Stayed | Denied *Plaintiffs amended complaint and substituted class representative after certification was denied* 5/20/20 |
| **Tallahassee Pediatric Dentistry, PLLC v. Airgas USA, LLC Case No. 4:19-cv-00199 *First Filing*** | Northern District of Florida Tallahassee Division | 4/29/2019 | Closed (Voluntary Dismissal was filed 3 days later, then the case below was filed) | No |
| **Tallahassee Pediatric Dentistry PLLC v. Airgas USA LLC** | Northern District of Florida Tallahassee Division | 5/1/2019 | Closed Stipulation for Dismissal without Prejudice | No |
| **K&T of Panama City, LLC v. Gordon Foods Services, Inc. Case No. 18000904CA** | Fourteenth Judicial Circuit Bay County | 9/21/2018 | Closed Stipulation for Dismissal with Prejudice | No |
| **Snellgrove's Restaurant, Inc. v. Gordon Food Service, Inc. Case No. 2019-CA-10700** | Thirteenth Judicial Circuit in and for Hillsborough County, Florida | 10/17/2019 | Currently pending | No |

84.     The Price Armstrong Enterprise has never specifically alleged how the fuel surcharge is illegal.

85.     Instead, the Price Armstrong Enterprise abuses the discovery process to conduct a fishing expedition to first find out whether (a) an "illegal" fuel surcharge was actually charged; (b) to determine the value of the potential claim against the target vendor by examining its financial

records; (c) evaluating the target's business operations to see if there are other avenues to go after the fuel surcharge, including examining records to determine whether they can identify better class members to pursue a claim in the event they fail with the current claim; and (d) evaluating the target vendors business to determine whether it wishes to litigate the case (i.e., determine whether the claim is financially worthwhile to pursue *after* suit has already been filed).

86.     Price Armstrong even maintains a specific webpage within its website to advertise these lawsuits to potential clients both within their jurisdiction of Alabama, and beyond the boundaries of where they are allowed to practice law—(illegally) in Florida and Georgia.



87.     Many of these class action fuel surcharge cases filed by the Price Armstrong Enterprise in Florida have been settled before a class was certified, which is irregular as the proper objective of a class action lawsuit is to obtain class certification and achieve a resolution for all class members, not just the class representative and its counsel.

88.     Two of the Price Armstrong Enterprise's associates are Snellgrove's (the Plaintiff in the 2019 Snellgrove's Restaurant v. GFS case ("Snellgrove's Suit"))—the second case brought against GFS) and K&T (the Plaintiff in the first-class action case that the Price Armstrong Enterprise brought against GFS).

89.     Upon information and belief, the Price Armstrong Enterprise convinces Florida businesses to agree to be its lead plaintiff in these class action lawsuits against their vendors in exchange for payment from the law firm (payment in addition to being reimbursed for the fuel surcharge) assuming the law firm is successful in resolving the claim.

90.     Attached and marked as **Exhibit 2** is an affidavit that the Price Armstrong Enterprise filed in the Snellgrove's Suit, which was sworn to by Tammy Devane, a principal owner of Snellgrove's.

91.     Ms. Devane identified two other targets of the Price Armstrong Enterprise for which her company served as lead plaintiff in a class action case, both of which were settled before a class was certified.

92.     Ms. Devane swears in her affidavit that she and her husband Curtis Devane owned and operated Snellgroves' Restaurants in Plant City, Florida for 26 years until she sold the restaurant business to Truong Holdings, LLC ("THL") in September 2018, almost a year prior to filing the Snellgrove's Suit against GFS.

93.     Despite the fact that Mr. and Mrs. Devane sold their restaurant business in September of 2018, and their business was dissolved by the Florida Department of State, she claims that she contacted the Price Armstrong law firm to represent Snellgrove's in a series of class action lawsuits in Florida against former vendors of their defunct business, including the Snellgrove's Suit against GFS.

94.     For example, also on behalf of Snellgrove's, the Price Armstrong Enterprise had filed a putative class action against GFS's competitor, styled *Snellgroves Restaurant, Inc., v. Performance Food Group Company and Performance Food Group, Inc*., Case No. 2018-CA-8326 (13th Cir., Hillsborough County, Florida) (the "Other Snellgrove's Case").

### B.     The Price Armstrong Enterprise's First Assault on GFS.

95.     On September 21, 2018, Ryan Hobbs of Brooks LeBoeuf filed a putative class action lawsuit against GFS on behalf of K&T styled: *K&T of Panama City, LLC vs. GFS, Inc*., Case No. 2018-CA-000904 (14th Cir., Bay County, Florida) (the "Bay County Case").

96.     Ryan Hobbs filed this lawsuit in his name as an attorney with Brooks LeBoeuf, and not as an attorney with Price Armstrong.

97.     Mr. Hobbs subsequently filed motions seeking the pro hac vice admission of Price Armstrong attorneys Oscar Price and Garrett Owens.

98.     Mr. Hobbs' participation in this lawsuit was as a shareholder of Brooks LeBoeuf with no mention or reference that he was affiliated with Price Armstrong.

99.     It is noteworthy to mention that while the Price Armstrong Enterprise was filing its first-class action case against GFS on behalf of K&T, Snellgrove's, was in the process of closing on the sale of its business to THL and closing down its business.

100.    K&T was and continues to be a customer of GFS by virtue of being a franchisee of the restaurant group commonly known as "First Watch."

101.    Upon information and belief, the Price Armstrong Enterprise solicited and induced K&T, without first investigating the nature of its relationship with GFS, to file the Bay County Case using the same basic, generic and non-specific form complaint that the Price Armstrong Enterprise has used in other lawsuits, including the Snellgrove's lawsuit.

102.    The Price Armstrong Enterprise undertook no due diligence as to how the fuel surcharge of $144 that GFS collected from K&T was allegedly illegal, how K&T was damaged by the collection of this $144, or how K&T was a proper class representative of other GFS customers in Florida, especially since, as Messrs. Price and Armstrong found out that the fuel surcharge was part of a contractual relationship that was negotiated and agreed to by the franchisor, First Watch.

103.    The Price Armstrong Enterprise was aggressive in its pursuit of proprietary customer and financial data from GFS, not merely to determine whether a proper class action existed, but to obtain protected financial information about GFS to enable it to evaluate the financial value of the claim to decide whether it wanted to move forward with the case, or possibly consider another more lucrative approach to extract money from GFS.

104.    Attached and marked as **Exhibit 3** is a copy of the onerous document request that the Price Armstrong Enterprise served on GFS on behalf of K&T in the Bay County Case, which is exactly the same documents request that the Price Armstrong Enterprise served on GFS in the Snellgrove's Suit.

105.    The documents requested were far beyond the scope of what one would expect at the early stage of a class action lawsuit, and it is plain from the face of the document that the requests were grossly overbroad, unduly burdensome, and sought discovery into financial matters that have nothing to do with defining the class, which is the first step in a class action lawsuit.

106.    In an effort to work through the discovery issues, GFS, not knowing the real objective of the Price Armstrong Enterprise, negotiated the production of a limited set of propriety and confidential business records to produce to the Price Armstrong Enterprise to enable it to understand why the class action lawsuit it filed was baseless.

107.    To that end, counsel negotiated, and the Price Armstrong Enterprise drafted, a confidentiality Order to submit to the Court for entry to protect its confidential and proprietary information from improper use and disclosure.

108.    The Stipulated Protective Order ("Protective Order") entered by the court in the Bay County Case on May 3, 2019 is attached and marked **Exhibit 4.**

109.    Attached and marked as **Exhibit 5** is an email from Nicholas Armstrong confirming the Price Armstrong Enterprise's acknowledgement and agreement to treat all documents produced by GFS as confidential information under the Protective Order.

110.    GFS provided the Price Armstrong Enterprise with a confidential copy of the documents that govern the application of the fuel surcharge in the relationship with K&T, among other documents and dispositive evidence, which ultimately lead the Price Armstrong Enterprise's voluntary dismissal of the Bay County Case.

111.    The Price Armstrong Enterprise quickly lost interest in pursuing the case against GFS on behalf of K&T because it knew that it would lose the case on the merits and would not be able to have a class certified.

112.    Oscar Price represented to the Court, during a hearing on August 27, 2019, that K&T was not interested in pursuing this class action lawsuit further, and that the Price Armstrong Enterprise wanted to substitute in another one of its clients, Snellgrove's, which was not related in any way to K&T other than the fact that they shared the same lawyers.

113.    Attached and marked as **Exhibit 6** is a copy of the transcript from the 27 August 2019 hearing.

114.    The Court in the Bay County Case denied the proposed substitution of Snellgrove's for K&T because the proposed action was not permissible under Florida law.

115.     Oscar Price subsequently contacted counsel for GFS to advise that K&T intended to voluntarily dismiss its claims against GFS and requested a stipulation to accomplish same.

116.     Attached and marked as **Exhibit 7** is the Joint Stipulation for Dismissal with Prejudice filed on September 16, 2019 in the Bay County Case.

117.     Pursuant to the Stipulated Protective Order and Joint Stipulation for Dismissal with Prejudice, K&T and the Price Armstrong Enterprise were required to return to GFS or destroy all discovery produced by in the Bay County Case. See **Ex. 4 at ¶ 14; Ex. 10** (requiring disposal on or before September 20, 2019).

118.     GFS has never been informed that either the Price Armstrong Enterprise nor K&T complied with their respective obligations concerning the return of GFS confidential, proprietary, and trade secret documents.

119.     Upon information and belief, the Price Armstrong Enterprise retained these documents to assist them in planning their next assault on GFS, described in the forthcoming section.

### C.     The Price Armstrong Enterprise's Second Assault on GFS—the 2019 state court Snellgrove's Restaurant, Inv. v. GFS case.

120.     Oscar Price informed GFS that the owners of Snellgrove's were unhappy about the fuel surcharge and wanted to join his cause against GFS.

121.     Being made aware of this concern, GFS acted quickly to allay its customer's concerns to avoid having to deal with yet another frivolous lawsuit from the Price Armstrong Enterprise.

122.    The GFS account manager for the Snellgroves' Restaurant account attempted to speak with the customer to understand its purported unhappiness about the fuel surcharge so that GFS could resolve any issue, especially since the amount was small.

123.    The GFS account manager was not able to speak with the Snellgrove's owners, and so GFS refunded the entire fuel surcharge of $154.00.

124.    Attached and marked as **Exhibit 8** is a copy of the refund check that GFS issued and mailed to Snellgroves' Restaurant at its principal place of business as noted on invoices and the Florida Secretary of State, and which was deposited into its bank account and cleared.

125.    Unbeknownst to GFS, Tammy and Curtis Devane sold their business to THL in September 2018, without informing GFS of the change of ownership; as the new owners of Snellgrove's Restaurant continued to use the account of the prior owners, also without making GFS aware of the legal change.[4]

126.    The Price Armstrong Enterprise launched its second assault on October 17, 2019 (a little more than a month after dismissing the Bay County Case) by filing a new "class action" lawsuit against GFS in the name of Snellgrove's, a company that had been out of business for more than year, sold its business to another entity, and was sent a refund by GFS for the fuel surcharge.[5]

127.    GFS made the Price Armstrong Enterprise and Snellgrove's aware of the fact that a refund had been issued to Snellgrove's and that the check was cashed, thereby making its new lawsuit against GFS moot, and disqualifying the defunct company from serving as a class representative.

---

[4] GFS first learned that Mr. and Mrs. Devane sold their interests in the restaurant when the Price Armstrong Enterprise filed an affidavit that Mrs. Devane purportedly signed in response to a motion that GFS filed in February 2020 within the state court Snellgrove's Restaurant, Inc. v. GFS case.
[5] Although the case was filed in October, GFS was not served with the summons and complaint until December 12, 2020.

128.    Nevertheless, the Price Armstrong Enterprise continued to maintain the class action, with Snellgrove's serving as the class representative.

129.    The Price Armstrong Enterprise filed an unnotarized affidavit sworn to by Tammy Devane (**See Exhibit 2**), stating that neither she nor Snellgrove's received the refund check and informing GFS for the first time that she had sold her business to THL in September of 2018.

130.    The refund check was mailed to Snellgrove's at the same business address at which GFS had done business with Snellgrove's for the entirety of their relationship, 109 South Collins Street, Plant City, Florida 33563. Moreover, the address where the refund check was mailed is the same address at which GFS mailed the invoices containing the fuel surcharges that Snellgrove's had paid.

131.    Also, Snellgrove's address registered as its principal place of business is the same address in Plant City according to the Florida Department of State.

132.    The Price Armstrong Enterprise and Snellgrove's claim that the refund check was cashed by "some other entity," and therefore, they should be allowed to continue to pursue a class action case because Snellgrove's never received the money; it is odd that a defunct company would be interested in pursuing a class action case against a former vendor over $154.00, especially after already having sold the business and when the vendor has issued a refund.

133.    Instead of a defunct entity continuing to pursue a class action to recover $154.00 when it was informed that GFS had refunded the money and, if "some other entity" had cashed the check, then Snellgrove's could either have asked that entity (presumably THL since it now own the restaurant and works from the address that the check was sent) or ask GFS to reissue the check.

134.    Instead, the Price Armstrong Enterprise and Snellgrove's continued on with a frivolous claim, in the form of a class action, in order to extract a large settlement from GFS, without any good faith belief that GFS has, in fact, engaged in any unlawful or deceptive conduct.

135.    The Bay County Case and the Snellgrove's class action show that the purpose in pursuing these lawsuits against GFS is to enable the Price Armstrong Enterprise to extract money from GFS by using the legal system as a tool to harass a legitimate business enterprise with onerous discovery and the promise of expensive litigation, and additional lawsuits in other jurisdictions in order to cause GFS to pay the Price Armstrong Enterprise in exchange for its agreement to resolve a baseless assault on its business.

### CONDITIONS PRECEDENT TO FILING SUIT

136.    GFS alleges that all conditions precedent to seeking the relief requested in this counterclaim have either occurred, expired, or been effectively waived.

### COUNT I

### VIOLATIONS OF 15 USC § 1125 FOR UNFAIR AND DECEPTIVE COMPETITION AND FALSE ADVERTISING—THE FEDERAL LANHAM ACT

137.    GFS re-adopts, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 136 above, as if fully set forth herein.

138.    GFS files this claim against each of Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, and Brooks LeBoeuf for violations of the 15 USC § 1125 for unfair and deceptive competition and false advertising, (the "Lanham Act"), and seeks all relief available to GFS under the same.

139.    The Actors have and continue to participate in unconscionable acts and practices and unfair and deceptive acts in violation of the Lanham Act, as described throughout this Complaint and below.

140.    The acts and omissions described in paragraphs 20-73 collectively constitute intentional unlawful acts and practices as contemplated by the Lanham Act. These acts and omissions were committed with the intent to deceive GFS and the public at large, for the financial benefit of the Actors.

141.    For example, the Actors made false and misleading statements of fact with regards to their ability to represent clients vis a vis their office locations and attorney affiliations to the public as a means of commercial advertising for financial gain in the promotion of their legal services. This allows the Actors to gain financial benefits and advantages by obtaining clients for legal services in geographic locations beyond which the Actors are truly permitted to practice law.

142.    These false and misleading statements are deceptive in nature for the reasons described in paragraphs 20-73 and will deceive the intended audiences of potential clients (individual and small business consumers). The Actors' internet advertising—their websites— deceive the public by promoting legal services from their "offices in Alabama Georgia, and Florida." As described in paragraphs 20-73 above, the Actors, in all reality, are only able to practice law in their own respective home states and do not maintain bona fide offices (as required by the Florida Bar) in states other than their respective home states.

143.    The deceptions made to the public are material in nature because they will, and certainly have (as evidenced by the lawsuits that the Actors tend to litigate), influence the decisions of potential clients within Florida and Georgia to retain the services of the Actors. Further, beyond the impact made to the public at large, these lawsuits generated by these Actors outside of their

permitted jurisdictions are also utilized to extort exorbitant "settlements" from companies, like GFS and others.

144.     The Actors caused the deceptive statements to enter into interstate commerce because the false and misleading statements were made publicly on the internet (their website), accessible to all nationwide. Further, the Actors are attempting to gain the business of three separate states—Alabama, Florida, and Georgia—constituting interstate commerce.

145.     The aforementioned activities have been undertaken by the Actors in bad faith because the Actors have attempted to cleverly conceal their predatory and unfair practices through the artificial enterprise described in paragraphs 20-73 above.

146.     The acts and omissions described in paragraphs 20-73 have caused financial and other harm to GFS and will continue to cause harm to the corporation until the Court enters the appropriate relief to terminate the unlawful conduct of these actors.

147.     The acts and omissions described in the aforementioned paragraphs are a direct and proximate cause of the harm suffered by GFS for which it seeks all remedies available to it under Lanham Act and other applicable law.

WHEREFORE, GORDON FOOD SERVICE, INC. respectfully demands judgement against Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, and Brooks LeBoeuf, for all remedies, including punitive and other exemplary damages, available under the Lanham Act and any other applicable Federal or Florida laws; together with such other and additional relief as the Court deems just and proper.

## COUNT II

## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

148.    GFS re-adopts, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 136 above, as if fully set forth herein.

149.    GFS files this claim against each of Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, and Brooks LeBoeuf for violation of the Florida Deceptive and unfair Trade Practices Act, §§501.201- 501.213, Florida Statutes, (the "*FDUPTA*"), and seeks all relief available to GFS under FDUPTA.

150.    The Actors have and continue to participate in unconscionable acts and practices and unfair and deceptive acts in violation of FDUPTA, as described throughout this Complaint and below.

151.    The acts and omissions described in paragraphs 20-73 collectively constitute intentional unlawful acts and practices as contemplated by Section 501.204, Florida Statutes, and the wealth of Florida common law interpreting this statute. These acts and omissions were committed with the intent to deceive GFS and the public at large, for the financial benefit of the Actors.

152.    The acts and omissions described in paragraphs 20-73 have caused financial and other harm to GFS and will continue to cause harm to the corporation until the Court enters the appropriate relief to terminate the unlawful conduct of these actors.

153.    The acts and omissions described in paragraphs 20-73 are a direct and proximate cause of the harm suffered by GFS for which it seeks all remedies available to it under FDUPTA and Florida law.

WHEREFORE,  GORDON  FOOD  SERVICE,  INC.  respectfully demands judgement against Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, and Brooks LeBoeuf, for

all remedies available under the Florida Deceptive and unfair Trade Practices Act, §§501.201-501.213, Florida Statutes, including punitive damages, together with such other and additional relief as the Court deems just and proper.

## COUNT III

## VIOLATIONS OF 18 USC § 1962—FEDERAL RICO STATUTE

154.    GFS re-adopts, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 136 above, as if fully set forth herein.

155.    GFS files this claim against each of Defendants for violation of the Federal RICO (Racketeer Influenced and Corrupt Organization), 18 USC § 1962 (the "*Federal RICO Statute*"), and seeks all relief available to GFS under the Federal RICO Statute.

156.    Defendants—the "Price Armstrong Enterprise"—in combination formed a distinct "Enterprise" within the meaning of 18 USC § 1962 because it is a group of individuals and entities associated in fact acting in concert.

157.    Within the past two years, the Price Armstrong Enterprise engaged in a pattern of racketeering activity in more than two instances with similar intents, methods, and victims, as described in paragraphs 20-135. Primarily, the Price Armstrong Enterprise has engaged in the creation of an artificial "organization" to unfairly compete and obtain clients outside the jurisdiction they are allowed to practice law within, in an effort to extort millions of dollars from companies such as GFS.

158.    The Price Armstrong Enterprise directly or indirectly derived income from the aforementioned pattern of racketeering activity.

159.    The acts and omissions described in paragraphs 20-135 collectively constitute unlawful acts and practices as contemplated by the Federal RICO Statute and common law interpreting this statute.

160.    Further, the Price Armstrong Enterprise intended to engage in racketeering activities and conspired to intimidate and coerce GFS to pay money to alleged plaintiffs, in violation of federal statutes under Title 18 such as bribery and extortion—the predicate acts (described in paragraphs 20-135).

161.    Whether participating directly or consenting to the illicit activities of its business partners, each of the Defendants is responsible for the illegal behavior articulated above, and has contributed to the illegal enterprise established by Price Armstrong to illegally transact business in Florida, illegally solicit Florida based clients to file frivolous lawsuit, illegally filed and maintain frivolous lawsuits, practice law in Florida without the requisite licenses, authorizations, and the like, illegally advertise in Florida together with other acts and omission on the part of these actors, to extort money from GFS and others as a pattern and practice.

162.    The acts and omissions described in paragraphs 20-135 have caused financial and other harm to GFS and will continue to cause harm to the corporation until the Court enters the appropriate relief to terminate the unlawful conduct of these actors.

163.    The acts and omissions described in paragraphs 20-135 are a direct and proximate cause of the harm suffered by GFS for which it seeks all remedies available to it under the Federal RICO Statute.

WHEREFORE, GORDON FOOD SERVICE, INC. respectfully demands judgement against Defendants for all remedies available under the Federal RICO Statute, 18 USC § 1962,

including punitive damages, and appropriate sanctions for spoliation of material evidence in this case, together with such other and additional relief as the Court deems just and proper.

## COUNT IV

## FLORIDA RICO STATUTE

164.    GFS re-adopts, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 136 above, as if fully set forth herein.

165.    GFS files this claim against each of the Defendants, jointly and severally, for violation of the Florida RICO (Racketeer Influenced and Corrupt Organization), §§895.01- 895.09, Florida Statutes, (the "Florida RICO Statute"), and seeks all relief available to GFS under the Florida RICO Statute.

166.    Defendants—the Price Armstrong Enterprise—in combination, formed a distinct "Enterprise" within the meaning of Florida Statute § 895.02(5) because it is a group of individuals and entities associated in fact acting in concert.

167.    Within the past two years, the Price Armstrong Enterprise engaged in a pattern of racketeering activity in more than two instances with similar intents, methods, and victims, as described in paragraphs 73-136.

168.    The acts and omissions described in paragraphs 20-135 collectively constitute unlawful acts and practices as contemplated by Section 895.03, Florida Statutes, and the wealth of Florida common law interpreting this statute.

169.    Further, the Price Armstrong Enterprise intended to engage in racketeering activities and conspired to intimidate and coerce GFS (described in paragraphs 73-136, in violation of Florida Statutes 817 (Fraud) and 836.05 (Extortion).

170.     Whether participating directly or consenting to the illicit activities of its business partners, each of the Defendants are jointly and individually responsible for the illegal behavior articulated above, and has contributed to the illegal enterprise established by Price Armstrong to illegally transact business in Florida, illegally solicit Florida based clients to file frivolous lawsuit, illegally filed and maintain frivolous lawsuits, practice law in Florida without the requisite licenses, authorizations, and the like, illegally advertise in Florida together with other acts and omission on the part of these actors, to extort money from GFS and others on a continuing and ongoing basis.

171.     The acts and omissions described in paragraphs 20-135 have caused financial and other harm to GFS and will continue to cause harm to the corporation until the Court enters the appropriate relief to terminate the unlawful conduct of these actors.

172.     The acts and omissions described in paragraphs 20-135 are a direct and proximate cause of the harm suffered by GFS for which it seeks all remedies available to it under the Florida RICO Statute.

WHEREFORE, GORDON FOOD SERVICE, INC. respectfully demands judgement against Defendants, jointly and severally, for all remedies available under the Florida RICO Statute, §§895.01- 895.09, Florida Statutes, including punitive damages, and appropriate sanctions for spoliation of material evidence in this case; together with such other and additional relief as the Court deems just and proper.

## COUNT V

## VIOLATIONS OF THE FEDERAL UNIFORM TRADE SECRETS ACT

173.     GFS re-adopts, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 136 above, as if fully set forth herein.

174.    GFS files this claim against each of Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, Brooks LeBoeuf, and K&T for violation of the Federal Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, et seq. (the "Act"), and seeks all relief available to GFS under the Act.

175.    The documents that GFS produced in the Bay County Case were to be treated as confidential, proprietary, and trade secret information pursuant to the Protective Order and the agreement of counsel prior to the documents being produced.

176.    The information obtained by Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, Brooks LeBoeuf, and K&T was sufficient to give them an understanding of how GFS manages certain aspects of its business in terms of the fuel surcharges that it collects from its customers in Florida, in addition to its franchise customer First Watch, which has franchisees in multiple states that order significant quantities of food from GFS every year.

177.    GFS considers the information produced to be confidential, proprietary and trade secret, and the kind of information that is not shared outside of the company, especially to its competitors or the competitors of its customers.

178.    Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, Brooks LeBoeuf, and K&T knew that GFS considered this information to be confidential, proprietary and trade secret, which is why the lawyers representing K&T drafted the Protective Order and affirmed to GFS that the information being produced would be treated as confidential under the Protective Order (see email attached and marked as **Exhibit 5**).

179.    Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Brooks LeBoeuf, and K&T (including their respective firms and partners as they also benefited from the use of the GFS's trade secret information in violation of the statute) did not comply with their obligations under the Protective Order or the Joint Stipulation for Dismissal.

180.    Upon information and belief, the Actors referred to throughout this Count purportedly destroyed the documents at issue once they received a copy of GFS's Amended Counterclaim (originally filed in the Snellgroves lawsuit within the State Court—Case Number: 2019-CA-10700), which actions constitute spoliation and destruction of key evidence in this case, for which sanctions, among other relief, would be appropriate.

181.    The acts complained of not only constitute a material breach and violation of the statute, but they are also the direct and proximate cause of harm to GFS, now and in the future.

182.    The Defendants' violation of the Federal Uniform Trade Secrets Act entitles GFS to injunctive relief, damages, attorneys' fees, among other remedies set forth in 18 U.S.C. §1836(b)(3).

183.    Defendants' actions were willful and malicious in nature because Defendants intended to use the trade secret information to wrongfully obtain profits vis a vis litigation against GFS; as such GFS also seeks exemplary—punitive—damages against Defendants. Further, as Defendants acted in bad faith, GFS demands an award of its attorney fees.

WHEREFORE, Gordon Food Service, Inc. respectfully demands judgement against Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, Brooks LeBoeuf, and K&T for all remedies available under 18 U.S.C. §1836, including punitive damages, attorneys' fees, and appropriate

sanctions for spoliation of material evidence in this case; together with such other and additional relief as the Court deems just and proper.

**COUNT VI**

**VIOLATIONS OF THE FLORIDA UNIFORM TRADE SECRETS ACT**

184.    GFS re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 136 above, as if fully set forth herein.

185.    GFS files this claim against each of Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, Brooks LeBoeuf, and K&T for violation of the Florida Uniform Trade Secrets Act, §§688.001-688.009, Florida Statutes, (the "Act"), and seeks all relief available to GFS under the Act.

186.    The documents that GFS produced in the Bay County Case were to be treated as confidential, proprietary, and trade secret information pursuant to the Protective Order and the agreement of counsel prior to the documents being produced.

187.    The information obtained by Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, Brooks LeBoeuf, and K&T was sufficient to give them an understanding of how GFS manages certain aspects of its business in terms of the fuel surcharges that it collects from its customers in Florida, in addition to its franchise customer First Watch, which has franchisees in multiple states that order significant quantitates of food from GFS every year.

188.    GFS considers the information produced to be confidential, proprietary and trade secret, and the kind of information that is not shared outside of the company, especially to its competitors or the competitors of its customers.

189.    Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, Brooks LeBoeuf, and K&T knew that GFS considered this information to be confidential, proprietary and trade secret, which is why the lawyers representing K&T drafted the Protective Order and affirmed to GFS that the information being produced would be treated as confidential under the Protective Order (see email attached and marked as **Exhibit 5**).

190.    Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Brooks LeBoeuf, and K&T (including their respective firms and partners as they also benefited from the use of the GFS's trade secret information in violation of the statute) did not comply with their obligations under the Protective Order or the Joint Stipulation for Dismissal.

191.    Upon information and belief, the Actors referred to throughout this Count purportedly destroyed the documents at issue once they received a copy of GFS's Amended Counterclaim (originally filed in the Snellgroves lawsuit within the State Court—Case Number: 2019-CA-10700), which actions constitute spoliation and destruction of key evidence in this case, for which sanctions, among other relief, would be appropriate.

192.    The acts complained of not only constitute a material breach and violation of the statute, but they are also the direct and proximate cause of harm to GFS, now and in the future.

193.    The Defendants' violation of the Florida Uniform Trade Secrets Act entitles GFS to injunctive relief (§ 688.003), damages (§ 688.004), attorneys' fees (§ 688.005) and Preservation of Secrecy (§ 688.006).

WHEREFORE, GFS, Inc. respectfully demands judgement against Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Dean LeBoeuf, Rhonda Bennett, Matthew Foster, Scott Gwartney, John Leace, Brooks LeBoeuf, and K&T for all remedies available under the Florida

Uniform Trade Secrets Act, § 688, Florida Statutes, including punitive damages, and appropriate sanctions for spoliation of material evidence in this case; together with such other and additional relief as the Court deems just and proper.

## COUNT VII

## CONVERSION OF CONFIDENTIAL AND PROPRIETARY INFORMATION

194.    GFS re-adopts, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 136 above, as if fully set forth herein.

195.    GFS files this claim against each of Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Brooks LeBoeuf, and K&T for conversions of its trade secret, confidential and proprietary information produced in the Bay County Case.

196.    The documents that GFS produced in the Bay County Case were to be treated as confidential, proprietary, and trade secret information pursuant to the Protective Order and the agreement of counsel prior to the documents being produced.

197.    The information obtained by Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Brooks LeBoeuf, and K&T was sufficient to give them an understanding of how GFS manages certain aspects of its business in terms of the fuel surcharges that it collects from its customers in Florida, in addition to its franchise customer First Watch, which has franchisees in multiple states that order significant quantitates of food from GFS every year.

198.    GFS considers the information produced to be confidential, proprietary and trade secret, and the kind of information that is not shared outside of the company, especially to its competitors or the competitors of its customers.

199.    Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Brooks LeBoeuf, and K&T knew that GFS considered this information to be confidential, proprietary and trade

secret, which is why the lawyers representing K&T drafted the Protective Order and affirmed to GFS that the information being produced would be treated as confidential under the Protective Order (see email attached and marked as **Exhibit 5**).

200.    Oscar Price, Nicholas Armstrong, Price Armstrong, Ryan Hobbs, Brooks LeBoeuf, and K&T did not comply with their obligations under the Protective Order the Joint Stipulation for Dismissal.

201.    Upon information and belief, the Actors referred to throughout this Count purportedly destroyed the documents at issue once they received a copy of GFS's Amended Counterclaim (originally filed in the Snellgroves lawsuit within the State Court—Case Number: 2019-CA-10700), which actions constitute spoliation and destruction of key evidence in this case, for which sanctions, among other relief, would be appropriate.

202.    The acts complained of not only constitute a material breach and violation of law, but they are also the direct and proximate cause of harm to GFS, now and in the future.

203.    The acts complained of constitute a direct and proximate cause of harm to GFS, now and in the future.

WHEREFORE, GFS respectfully demands judgement against Defendants, jointly and severally, for all remedies available under Federal laws and Florida laws, including punitive damages (as a result of intentional and malicious misconduct, and bad faith) and attorney's fees under the applicable statutory provisions, together with such other and additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury.

Respectfully submitted:

**éclat Law, LLP**

*/s/ Kevin K. Ross-Andino*
Kevin K. Ross-Andino, # 66214
kevin.ross@eclatlaw.com
Jolynn M. Falto, #1002743
jfalto@eclatlaw.com
Mitchell E. Grodman, # 543713
mgrodman@eclatlaw.com
Lisa E. Bolinger, # 1017749
lbolinger@eclatlaw.com

307 Cranes Roost Boulevard # 2010
Altamonte Springs, Florida 32701
Main Line: (407) 636-7004

*Lead Trial Counsel for Gordon Food Service, Inc.*